Law Offices of Jonny Russell, LLC
Jonathan R. Russell, OSB No. 220641
*Jonnyrussell.law@outlook.com*
500 SW 116 Ave., Fl. 4
Portland, OR 97225
Phone 971.284.1050
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **CORY JESPERSON;** individually; **MARIANA JESPERSON;** individually. <br><br> Plaintiffs, <br><br> v. <br><br> **COUNTY OF YAMHILL**; **SERGEANT ROBERT EUBANKS,** in his individual capacity; **DEPUTY ANGEL ARENAS**, in his individual capacity**; and DOES 1-10.** <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT** <br><br> 1. Fourth Amendment Violation— Warrantless Entry into Residence (42 U.S.C. § 1983) <br><br> 2. Fourth Amendment Violation— Warrantless Seizure (42 U.S.C. § 1983) <br><br> 3. Fourth Amendment Violation— Excessive Force (42 U.S.C. § 1983) <br><br> 4. Supervisory Liability (42 U.S.C. § 1983) <br><br> 5. Municipal Liability (*Monell*) (42 U.S.C. § 1983) |

Plaintiffs Cory Jesperson and Mariana Jesperson, through Law Offices of Jonny Russell, LLC, bring this

Complaint against Defendants and alleges as follows:

**Complaint** 1 of 18

## NATURE OF THE ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiffs' rights under the Fourth Amendment to the United States Constitution. Plaintiffs seek compensatory damages, punitive damages against the individual Defendants, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and all other relief authorized by law arising from Defendants' warrantless entry into Plaintiffs' residence, unlawful seizure, excessive force, and related constitutional violations.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4). Plaintiffs' claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

3. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Yamhill County, Oregon.

## PARTIES

4. **Plaintiff Cory Jesperson ("Mr. Jesperson")** is, and at all times relevant was, an adult resident of Yamhill County, Oregon. At all times relevant to this action, Mr. Jesperson was a lawful owner and occupant of the residence located in Lafayette, Oregon ("the Jesperson Residence"), where the events giving rise to this action occurred.

5. **Plaintiff Mariana Jesperson ("Mrs. Jesperson")** is Mr. Jesperson's wife. At all times relevant, Mrs. Jesperson was an adult resident of Yamhill County, Oregon, and a lawful owner and occupant of the Jesperson Residence located in Lafayette, Oregon.

6. **Defendant Sergeant Eubanks** was, at all times relevant, a sworn deputy sheriff employed by the Yamhill County Sheriff's Office and acting under color of the laws,

customs, and authority of the State of Oregon and Yamhill County.  Sergeant Eubanks is sued in his individual capacity.

7. **Defendant Deputy Angel Arenas** was, at all times relevant, a sworn deputy sheriff employed by the Yamhill County Sheriff's Office and acting under color of the laws, customs, and authority of the State of Oregon and Yamhill County.  Deputy Arenas is sued in his individual capacity.

8. **Defendant County of Yamhill (Yamhill Sheriff's Office)** is an Oregon political subdivision organized and existing under the laws of the State of Oregon.  The Yamhill County Sheriff's Office is a department of Yamhill County responsible for law enforcement within the County.  At all relevant times, Defendants Eubanks, Arenas, and the Doe Defendants were employees, agents, and/or peace officers of Yamhill County acting within the course and scope of their employment.

9. **Defendant Does:** Plaintiffs are presently unaware of the true names and capacities of Defendants sued herein as Does 1 through 10.  Plaintiffs therefore sue these Defendants by fictitious names.  Each Doe Defendant participated in, directed, authorized, approved, ratified, failed to prevent, or otherwise caused the constitutional violations alleged herein while acting under color of state law.  Plaintiffs will amend this Complaint to substitute the true names and capacities of the Doe Defendants when they become known through discovery.

## RELEVANT PRELIMINARY FACTS

10. In May 2025, tensions developed between Plaintiff Cory Jesperson and his next-door neighbor, Mr. Miekle.  Prior to the June 8, 2025 incident, Mr. Miekle had engaged in several hostile interactions with the Jesperson family, including verbally insulting Mr. Jesperson's wife, Mariana, and engaging in conduct that Plaintiffs reasonably believed

**Complaint** 3 of 18

jeopardized the safety of their oldest son.  As a result, relations between the neighbors had substantially deteriorated before the incident at issue.

## OPERATIVE FACTUAL ALLEGATIONS

**A.  The June 8, 2025 Neighborhood Altercation**

11. On June 8, 2025, sometime before 10 p.m., Plaintiff Cory Jesperson was washing his motorcycle and his wife's car in the driveway.  After Mr. Jesperson finished washing the vehicles, he started the ignition on his motorcycle to bring it into the garage.  The motorcycle engine remained running for approximately fifteen seconds.  Mr. Jesperson did not repeatedly rev or race the engine.

12. Mr. Jesperson's next-door neighbor, Mr. Miekle, exited his front door and yelled out to Mr. Jesperson: "Fuck you!  You just woke up my kid, you fucking douche!  How about you shut the fuck up."  Mr. Miekle then challenged Mr. Jesperson to a standoff: "I'm right here [] you fucking douche!"

13. Mr. Jesperson left his garage and went into the street to confront Mr. Miekle.  Miekle stepped off the edge of his property onto the public sidewalk and gestured towards Jesperson with his arms open.  Mr. Miekle then stepped into the street and challenged Jesperson to fight while escalating the confrontation by calling Jesperson a "fuckin' retard."  Meanwhile, Mr. Jesperson's son restrained Jesperson during the confrontation.

14. As Mr. Jesperson approached, Mr. Miekle lowered his posture and shifted his attention toward Mr. Jesperson's dog, which had wandered near the edge of Mr. Miekle's lawn during the commotion. Mr. Miekle yelled at the dog, "Get the fuck off my lawn."  Mr. Jesperson then attempted to knock Mr. Miekle's hat from his head. As Mr. Jesperson reached toward the hat, Mr. Miekle shoved him, causing Mr. Jesperson to grab Mr.

Miekle's shirt, which tore during the brief struggle.  The physical altercation lasted only a matter of seconds and resulted in no visible injury to Mr. Miekle.

15. Mr. Miekle's wife called 9-1-1.  Officers from Yamhill County Sheriff's Office responded and Deputy Wilkinson reviewed Mr. Miekle's video footage of the altercation.

16. Deputy Wilkinson attempted to call Mr. Jesperson on the phone.  Mr. Jesperson's wife (Plaintiff Mariana Jesperson) answered the phone.  She told Deputy Wilkinson that Jesperson was not available Deputy Wilkinson informed Mrs. Jesperson that deputies would prepare a probable cause affidavit and would attempt to contact or arrest Mr. Jesperson at a later time.  The telephone conversation was brief and consisted primarily of Mrs. Jesperson informing Deputy Wilkinson that her husband was unavailable.

17. Defendant Sergeant Robert Eubanks was the sergeant on duty that night and present on scene.  After Deputy Wilkinson informed Sergeant Eubanks that he had attempted to telephone Mr. Jesperson—but was unable to speak to him—Sergeant Eubanks decided to let things cool for the night.  In his police report, Sergeant Eubanks wrote that he "believed it was best to speak with Cory [Jesperson] the following day when [officers] could contact him away from his residence."

18. At that point, the deputies had already concluded there was no need for immediate entry or arrest.

**B.  Deputies Return to Mr. Jesperson's Residence After Allegedly Receiving Phone Call that Mr. Jesperson had Stepped Outside his Residence**

19. Approximately two hours later, deputies returned to Plaintiffs' residence after allegedly receiving another report involving Mr. Jesperson.

20. Several officers remained positioned away from the residence for more than 20 minutes as Sergeant Eubanks waited for Mr. Jesperson to leave the residence.  Mr. Jesperson

**Complaint** 5 of 18

walked out of his residence and onto his front porch and began putting away the water hose he had used to wash his motorcycle and wife's car several hours earlier.

21. As Mr. Jesperson made his way back towards his front door, Sergeant Eubanks flashed his flashlight at Mr. Jesperson who was now standing in the doorframe of his open front door.  Sergeant Eubanks and the other deputies remained on the sidewalk and outside the curtilage of the residence.

22. Sergeant Eubanks asked Mr. Jesperson if he could talk to him.  Mr. Jesperson asked, "What the fuck do you want?"  Sergeant Eubanks asked for Mr. Jesperson's side of the story.  Mr. Jesperson briefly responded but declined Sergeant Eubanks' request that he come outside to continue the conversation.  Jesperson responded, "[t]hat little faggot next door called me out but couldn't handle it."  Sergeant Eubanks confirmed, "So you are not willing to *come out* and talk to us?"  Mr. Jesperson replied, "No."  He then concluded the conversation telling Sergeant Eubanks, "Have a good night."

23. After Mr. Jesperson declined further conversation and attempted to end the encounter, Sergeant Eubanks responded: "We'll be waiting for you." Mr. Jesperson responded, "Waiting for what?  What the fuck are you going to do?  I am right here."  Sergeant Eubanks announced: "Alright. Come on. You're going to jail."  Sergeant Eubanks and several deputies quickly advanced towards the front door as Mr. Jesperson shut the door.

**C. Deputies' Warrantless Entry, Seizure, and Excessive Force**

24. Defendant Deputy Angel Arenas was the first to run to the front door which was closed shut.  He grabbed the front doorknob, turned it—and along with several other deputies— pushed his entire weight into the door as Mr. Jesperson was standing on the other side trying to keep the door shut.  Multiple deputies assisted Defendant Arenas in pushing

**Complaint** 6 of 18

open Jesperson's front door giving the deputies just enough space for them to squeeze inside Mr. Jesperson's house.

25. Once the first deputy squeezed into his front door, Mr. Jesperson yelled to his wife, "Mariana," and repeatedly ordered deputies to leave the residence. Now standing approximately 10 feet inside Mr. Jesperson's home, Defendant Deputy Arenas punched Jesperson directly in the face as Jesperson, again, yelled, "Get the fuck out of my house."

26. After being punched in the face, two deputies forced Mr. Jesperson to the floor in his own living room—approximately 19 feet from the front door. Mr. Jesperson's wife stood in her nightgown and continuously ordered the officers "No trespassing" as three additional officers forced Mr. Jesperson into handcuffs in the prone position and pressed a Taser into his neck. Mr. Jesperson, likewise, protested, "Fuck you. You can't come into my house, you motherfuckers!"

**D. Medical Treatment Following the Arrest**

27. Mr. Jesperson was arrested and charged with three misdemeanors: (i) disorderly conduct in the second degree; (ii) resisting arrest; and (iii) escape in the third degree.

28. The following day, after being released from jail, Mr. Jesperson sought medical treatment for head pain, dizziness, and headaches following the deputies' use of force during the arrest. Mariana Jesperson transported him to the hospital for evaluation. The force to Mr. Jesperson's head also aggravated symptoms associated with a prior traumatic brain injury he had sustained years earlier. Following the incident, Mr. Jesperson experienced chronic headaches and ongoing dizziness for several months.

29. Ultimately, every criminal charge against Mr. Jesperson was dropped.

30. At no time prior to forcibly entering Plaintiffs' residence did any deputy obtain an arrest warrant, search warrant, or judicial authorization permitting entry into the residence. Nor

did any deputy seek telephonic judicial authorization before forcing entry into Plaintiffs'

home.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Fourth Amendment Violation—Unconstitutional Warrantless Entry and Seizure (42**

**U.S.C. § 1983)**

**(All Plaintiffs Against Defendants Eubanks and Arenas and DOES 1-10)**

31. Plaintiffs re-incorporate by reference all paragraphs as though fully set forth herein.

32. At all relevant times, Plaintiffs Cory Jesperson and Mariana Jesperson were lawful owners and occupants of the residence located in Lafayette, Oregon, where they possessed a reasonable expectation of privacy protected by the Fourth Amendment.

33. Defendants entered Plaintiffs' residence without a search warrant, arrest warrant, consent, or other judicial authorization.

34. Prior to entering the residence, Defendants had concluded that no immediate arrest was necessary and had previously decided to contact Mr. Jesperson at a later time after the situation had calmed.

35. At the time Defendants forced entry into the residence, there was no ongoing assault, no active pursuit from the scene of a crime, no immediate threat to any person, no imminent destruction of evidence, and no other emergency requiring immediate entry without first obtaining judicial authorization.

36. The offenses for which Defendants sought to arrest Mr. Jesperson were misdemeanor offenses.

37. After Cory Jesperson exercised his First Amendment protection not to speak with the Defendant officers and shut his front door, Defendants raced across the curtilage of his

property up to his front door, turned the door knob of Plaintiffs' front door and attempted to push the shut front door open with the officers' collective full body weight while Plaintiff Cory Jesperson tried to keep the door shut. Defendant officers barged into Plaintiffs' residence without consent.

38. There existed no circumstances necessary to prevent destruction of evidence, the escape of a suspect, or physical harm to the officers or other persons. Mr. Jesperson was inside his residence with his family and pet dog. There were no exigent circumstances present to except the warrant requirement. There were no specific, articulable facts demonstrating that anyone was in imminent danger of abuse. There was no urgency justified bypassing judicial approval prior to entering Plaintiff's home after midnight.

39. Defendants were not in "immediate" and "continuous" pursuit of Cory Jesperson from the scene of a crime at the moment they made entry. There was no chase from the scene of a crime.

40. Defendants' actions were the actual and proximate cause of the Fourth Amendment violation of Plaintiffs' constitutional rights.

41. Plaintiffs are entitled to economic and noneconomic damages in an amount to be determined at the time of trial.

42. Defendants' actions were malicious, oppressive or in reckless disregard of Plaintiffs' rights; and therefore, Plaintiffs seek punitive damages.

43. Pursuant to 42 U.S.C. §§ 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees, litigation expenses, taxable costs, and all other relief authorized by law pursuant to 42 U.S.C. §§ 1983 and 1988.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment Violation—Unreasonable Seizure (42 U.S.C. § 1983)

### (Plaintiff Cory Jesperson Against Defendants Eubanks and Arenas)

44. Plaintiff Cory Jesperson incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

45. At all relevant times, Defendants were acting under color of the laws, customs, and authority of the State of Oregon and Yamhill County.

46. Defendants intentionally seized Mr. Jesperson inside his residence by physically restraining him, forcing him to the floor, handcuffing him, and placing him under arrest.

47. At the time Defendants seized Mr. Jesperson, they had not obtained an arrest warrant or other judicial authorization permitting his arrest inside his residence.

48. At the time of the seizure, the only offenses for which Defendants sought to arrest Mr. Jesperson were misdemeanor offenses allegedly committed approximately two hours earlier.

49. The seizure occurred inside Mr. Jesperson's home, where Fourth Amendment protections are at their highest.

50. The seizure occurred after Mr. Jesperson exercised his constitutional right to terminate a consensual encounter with law enforcement and remain inside his residence.

51. Absent a warrant or exigent circumstances, Defendants lacked lawful authority to seize Mr. Jesperson inside his residence.

52. Defendants' warrantless seizure of Mr. Jesperson inside his residence was objectively unreasonable and violated the Fourth Amendment to the United States Constitution.

53. As a direct and proximate result of Defendants' conduct, Mr. Jesperson suffered physical injury, emotional distress, humiliation, loss of liberty, pain and suffering, and other compensable damages in an amount to be determined at trial.

54. Defendants acted intentionally, maliciously, recklessly, and/or with callous or reckless disregard for Mr. Jesperson's clearly established constitutional rights, entitling him to recover punitive damages against the individual Defendants.

55. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to recover compensatory damages, punitive damages against the individual Defendants, reasonable attorneys' fees, litigation expenses, and costs.

**THIRD CLAIM FOR RELIEF**

**Fourth Amendment Violation—Excessive Force (42 U.S.C. § 1983)**

**(Plaintiff Cory Jesperson Against Defendant Arenas)**

56. Plaintiffs re-allege all relevant paragraphs as though fully set forth herein.

57. At all relevant times, Defendant Arenas was acting under color of the laws, customs, and authority of the State of Oregon and Yamhill County.

58. After forcing entry into Plaintiffs' residence, Defendant Arenas intentionally struck Mr. Jesperson in the face with a closed-fist punch while Mr. Jesperson stood approximately ten feet inside his own residence.

59. Immediately thereafter, Defendant Arenas and other deputies forced Mr. Jesperson to the floor, handcuffed him, and restrained him in the prone position while another deputy pressed a Taser against Mr. Jesperson's neck.

60. At the time Defendant Arenas struck Mr. Jesperson, the underlying investigation concerned only misdemeanor offenses allegedly committed approximately two hours earlier.

61. Before Defendant Arenas used force, Mr. Jesperson had not assaulted any deputy, displayed any weapon, threatened any deputy with physical harm, or engaged in conduct creating an immediate threat of serious bodily injury to the deputies or any other person.

62. Although Mr. Jesperson attempted to prevent deputies from unlawfully entering his residence by holding his front door closed, once deputies forced their way inside the residence, Defendant Arenas immediately punched Mr. Jesperson in the face without warning.

63. Defendant Arenas delivered the punch immediately upon making physical contact with Mr. Jesperson and before attempting lesser means of control.

64. Considering the totality of the circumstances—including the minor nature of the suspected offenses, the absence of an immediate threat to officer safety, the absence of active flight, and the availability of less intrusive alternatives—Defendant Arenas' use of force was objectively unreasonable under the Fourth Amendment.

65. As a direct and proximate result of Defendant Arenas' conduct, Mr. Jesperson suffered physical injuries, pain, headaches, dizziness, aggravation of a preexisting traumatic brain injury, emotional distress, humiliation, and other damages according to proof at trial.

66. Defendant Arenas acted intentionally, maliciously, recklessly, and/or with callous or reckless disregard for Mr. Jesperson's clearly established constitutional rights, entitling Plaintiff to recover punitive damages.

67. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to recover compensatory damages, punitive damages, reasonable attorneys' fees, litigation expenses, and costs.

**Complaint** 12 of 18

**FOURTH CLAIM FOR RELIEF**

**Supervisory Liability – 42 U.S.C. § 1983**

**(All Plaintiffs Against Defendant Sergeant Eubanks)**

68. Plaintiffs re-allege all relevant paragraphs as though fully set forth herein.

69. At all relevant times, Defendant Sergeant Robert Eubanks was acting under color of the laws, customs, and authority of the State of Oregon and Yamhill County.

70. Sergeant Eubanks was the supervising deputy at the scene and exercised supervisory authority over the deputies participating in the warrantless entry into Plaintiffs' residence and the seizure of Mr. Jesperson.

71. Sergeant Eubanks personally directed, authorized, approved, and participated in the decision to enter Plaintiffs' residence without first obtaining an arrest warrant, search warrant, consent, or other judicial authorization.

72. Sergeant Eubanks personally ordered Mr. Jesperson's arrest immediately after Mr. Jesperson declined to continue a consensual encounter and exercised his constitutional right to remain inside his residence.

73. Prior to directing deputies to enter Plaintiffs' residence, Sergeant Eubanks had already determined that deputies would postpone Mr. Jesperson's arrest until the following day, when they could contact him away from his residence.  Despite previously concluding that immediate arrest was unnecessary, Sergeant Eubanks abandoned that course of action and instead directed deputies to force entry into Plaintiffs' residence without first obtaining judicial authorization

74. Sergeant Eubanks knew that neither he nor the other deputies possessed an arrest warrant or search warrant authorizing entry into Plaintiffs' residence and knew the facts and circumstances existing at the scene before directing deputies to enter the residence.

75. Despite that knowledge, Sergeant Eubanks directed, encouraged, authorized, or knowingly permitted the participating deputies to force entry into Plaintiffs' residence and seize Mr. Jesperson.

76. Sergeant Eubanks had a realistic opportunity to prevent the constitutional violations alleged herein but failed to do so.

77. As a direct and proximate result of Sergeant Eubanks' conduct, Plaintiffs suffered the damages alleged in this Complaint.

78. Sergeant Eubanks acted intentionally, maliciously, recklessly, and/or with callous or reckless disregard for Plaintiffs' clearly established constitutional rights, thereby entitling Plaintiffs to recover punitive damages against him.

79. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to recover compensatory damages, punitive damages against Sergeant Eubanks, reasonable attorneys' fees, litigation expenses, and taxable costs.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability (*Monell*) (42 U.S.C. § 1983)

### (All Plaintiffs Against Defendant Yamhill County)

80. Plaintiffs re-allege all relevant paragraphs as though fully set forth herein.

81. At all relevant times, the individual Defendants acted under color of the laws, customs, policies, and authority of Yamhill County.

82. The constitutional violations alleged herein were caused by one or more official customs, policies, longstanding practices, failures to train, failures to supervise, and/or ratification by Yamhill County.

Official Policy, Custom, or Practice

**Complaint** 14 of 18

83. Upon information and belief, Yamhill County maintained customs, practices, or understandings regarding warrantless residential entries that were inconsistent with clearly established Fourth Amendment law.

84. Following the warrantless entry into Plaintiffs' residence, Sergeant Eubanks informed Plaintiffs that the deputies' conduct was lawful because Oregon's hot-pursuit doctrine authorized the entry.

85. Sergeant Eubanks' statements reflected more than a mistaken interpretation of law by a single deputy. They reasonably support the inference that deputies had been instructed, trained, or otherwise understood that they could enter a private residence without a warrant to arrest a suspected misdemeanant under circumstances that did not satisfy the Fourth Amendment.

86. Upon information and belief, the constitutional violations alleged herein were not the product of a split-second mistake in a rapidly evolving emergency. Rather, they resulted from deputies acting consistently with their understanding of departmental training, instruction, supervision, or accepted practices concerning warrantless residential arrests.

87. The customs, policies, or practices of Yamhill County were the moving force behind the constitutional violations alleged herein.

Failure to Train

88. In the alternative, Yamhill County failed adequately to train its deputies and supervisors concerning the constitutional limitations governing warrantless entry into private residences.

89. Those recurring situations—including consensual "knock and talk" encounters, arrests of suspected misdemeanants, alleged hot pursuit, and warrantless residential entries—are ordinary and predictable aspects of patrol duties.

**Complaint** 15 of 18

90. Adequate training would have informed deputies that absent a warrant, consent, or genuine exigent circumstances, the Fourth Amendment prohibits entry into a private residence to effect an arrest.

91. The deputies' conduct during the incident, together with Sergeant Eubanks' subsequent explanation that the entry was lawful under Oregon law, demonstrates a substantial likelihood that Yamhill County failed adequately to train its deputies concerning these recurring constitutional issues.

92. Yamhill County's failure to train amounted to deliberate indifference to the constitutional rights of persons with whom its deputies would inevitably come into contact.

93. Yamhill County Sheriff's Office was deliberately indifferent to known or obvious consequences of its failure to train its police officers adequately as to citizen's rights who object to orders by peace officers to submit to a compelled investigation at the doorway of their residences and object to consenting to officers to enter the Plaintiffs' private residence.

94. The failure of Yamhill County Sheriff's Office to prevent violations of law by its employees and to provide adequate training caused the deprivation of Plaintiffs' rights by the individual officers; that is, the defendant's failure to prevent constitutional violations and violations of law by its employees and to train played a substantial part in bringing about or actually causing the injury or damage to Plaintiff.

95. That failure to train was a moving force behind the constitutional violations alleged herein.

Ratification

96. Following the incident, Plaintiffs filed a complaint concerning the warrantless entry into their residence.

**Complaint** 16 of 18

97. Upon information and belief, final policymakers for Yamhill County reviewed the deputies' conduct and approved, affirmed, or otherwise ratified the constitutional violations alleged herein.

98. Such ratification constituted official approval of the conduct and independently caused or contributed to the constitutional injuries suffered by Plaintiffs.

99. As a direct and proximate result of Yamhill County's customs, policies, practices, failures to train, failures to supervise, and ratification, Plaintiffs suffered damages in an amount according to proof at trial.

100.    Plaintiffs are entitled to economic and noneconomic damages in an amount to be determined at the time of trial.

101.    Pursuant to 42 U.S.C. §§ 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees, litigation expenses, and taxable costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Cory Jesperson and Mariana Jesperson respectfully request that judgment be entered in their favor and against Defendants, and that this Court award the following relief:

A.  For compensatory damages, including economic and noneconomic damages, according to proof at trial;

B.  For damages for physical pain, emotional distress, humiliation, mental anguish, inconvenience, loss of liberty, and other compensable injuries suffered as a result of Defendants' unconstitutional conduct;

C.   For punitive damages against the individual Defendants, Sergeant Robert Eubanks, Deputy Angel Arenas, and any other individual Defendant found

**Complaint** 17 of 18

liable under 42 U.S.C. § 1983, in an amount sufficient to punish and deter similar misconduct;

D. For reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §§ 1983 and 1988;

E. For prejudgment interest where permitted by law;

F. For post-judgment interest as provided by law;

G. For taxable costs incurred in this action;

H. For such other and further legal or equitable relief as this Court deems just and proper.

Signed and dated this 6th day of July 2026.

Respectfully submitted

/s/ Jonathan R. Russell, Esq.
Jonathan R. Russell, OSB No. 220641
Law Offices of Jonny Russell, LLC
500 SW 116 Ave., Fl. 4
Portland, OR 97225
Phone 971.284 1050

**Complaint** 18 of 18